Gregory L. Bonilla
MACo Defense Services
2717 Skyway Drive, Suite F
Helena, MT 59602-1213
Ph. (406) 441-5471
Fax (406) 441-5497
gbonilla@mtcounties.org

Counsel for Jefferson County

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| AUDEMIO OROZCO-RAMIREZ, | ) Cause No. DV-15-62-H-CCL |
| | ) Judge: Sam E. Haddon |
| Plaintiff, | ) |
| | ) |
| v. | ) **JEFFERSON COUNTY'S** |
| | ) **ANSWER BRIEF OPPOSING** |
| JEFFERSON COUNTY, MONTANA, | ) **PLAINTIFF'S MOTION FOR** |
| | ) **SANCTIONS** |
| Defendant. | ) |
| _____ | ) |

Defendant Jefferson County (the County), through its counsel, submits herein its Answer Brief Opposing Plaintiff's Motion for Sanctions (Doc. 16).

## FACTUAL BACKGROUND

There is substantial confusion concerning the video exports produced in this case. The County will do its utmost to alleviate the confusion.

On October 7, 2013, Jefferson County Sheriff Craig Doolittle was notified that Plaintiff was alleging he had been sexually assaulted while detained in the Jefferson County Detention Center (JCDC) in October, 2013. Aff. Craig Doolittle ¶ 2, Oct. 19, 2016. While at the JCDC from October 4, 2013 through October 7, 2013, Plaintiff was housed in A-Pod. (Doc. 1 at ¶ 14). As a consequence, Jail Commander Eric Rykal, along with two other individuals, including Bruce Norum of Immigration and Customs Enforcement (ICE), viewed the video directly from the system itself. Aff. Eric Rykal ¶ 3, Oct. 19, 2016. Commander Rykal watched the video from "lights out" (the time the day lights are turned off and the night lights are turned on) through breakfast time. Aff. Eric Rykal ¶ 4, Oct. 19, 2016. This time period spanned from 2201 hours on October 4, 2013 through 0703 on October 5, 2013. Aff. Eric Rykal ¶ 4, Oct. 19, 2016. Commander Rykal noted no evidence of a sexual assault nor did he note any out-of-the-ordinary gaps in the video. Aff. Eric Rykal ¶¶ 5-6, Oct. 19, 2016. It must be remembered that the video only records when there is motion, so some sort of gap in the early morning hours is to be expected. Aff. Eric Rykal ¶ 7, Oct. 19, 2016.

In any event, there were three exports of video footage from the County's DVR system concerning Plaintiff's brief incarceration at the JCDC. The first was an export done by a dispatcher, Jennifer McKenrick, on or about October 8, 2013. Aff. Jennifer McKenrick ¶ 4, Oct. 19, 2016; Aff. Craig Doolittle ¶¶ 3-4, Oct. 19,

2016. McKenrick was instructed by Doolittle to export the video footage of Plaintiff's entire stay at the JCDC. Aff. Jennifer McKenrick ¶¶ 4, Oct. 19, 2016; Aff. Craig Doolittle ¶¶ 3-4, Oct. 19, 2016. McKenrick believed she had done just that when she exported video in four-hour blocks onto 16 discs. Aff. Jennifer McKenrick ¶ 5, Oct. 19, 2016.

Consequently, when one of Plaintiff's attorneys, Shahid Hauque-Hasrath, requested, *inter alia*, video footage from the County, then-County Attorney Matt Johnson produced the discs believing they contained a complete export. Aff. Matt Johnson ¶¶ 3, Oct. 19, 2016. Mr. Hauque-Hasrath informed Mr. Johnson there was missing footage and the County investigated. Sheriff Doolittle determined that Disc 2 of the McKenrick export was missing approximately 90 minutes of time from 2230 hours to midnight on October 4, 2013. Therefore, on or about November 14, 2013, he instructed another dispatcher, Rebecca Warner, to export video from 2200 hours on October 4, 2013, through 0100 hours on October 5, 2013. Aff. Rebecca Warner ¶¶ 3-4, Oct. 19, 2016; Aff. Craig Doolittle ¶¶ 9, 12, Oct. 19, 2016. Warner did so and the footage was provided to Mr. Hauque-Hasrath. Aff. Rebecca Warner ¶ 9, Oct. 19, 2016; Aff. Matt Johnson ¶ 5, Oct. 19, 2016. Neither Mr. Hauque-Hasrath nor any other of Plaintiff's representatives ever requested any other additional video footage concerning a specific time frame from the County. Aff. Matt Johnson ¶ 7, Oct. 19, 2016.

There were, however, numerous discussions concerning the video footage between Plaintiff's representatives and the County. The County therefore hired the DVR system's manufacturer, Pelco by Schneider Electric, to do a complete export. A Pelco technician did so on or about December 2, 2013 at a cost to the County of $5,065.00. Aff. Craig Doolittle ¶¶ 16-17, Oct. 19, 2016. The County believed this export to be complete based on representations from Pelco. Aff. Matt Johnson ¶ 9, Oct. 19, 2016; Aff. Craig Doolittle ¶ 18, Oct. 19, 2016.

Mr. Hauque-Hasrath wrote a letter dated October 21, 2013 seeking preservation of evidence. Mr. Johnson did not take that request to mean preservation of the hard drive of the DVR system. Aff. Matt Johnson ¶¶ 12-13, Oct. 19, 2016. As a prosecutor, Mr. Johnson had independent motivation to preserve evidence. Aff. Matt Johnson ¶ 11, Oct. 19, 2016. After all, the Jefferson County Sheriff's Office (JCSO) was investigating a crime. Mr. Johnson believed the exports to be the preservation of evidence requested. Aff. Matt Johnson ¶ 12, Oct. 19, 2016.

Suit in this matter was filed on July 9, 2015. (Doc. 1). Jefferson County provided to the office of the undersigned a thumb drive containing each of the exports described above. The timestamps on the discs (the original exports) in the County's possession match the timestamp on the disc label and the file names. Aff. Craig Doolittle ¶ 15, Oct. 19, 2016. The timestamps on the videos in the

undersigned's files likewise match the names of the files. Plaintiff, however, states that the video timestamps do not match the video file names or disc labels. (Doc. 16 at 6-7). For example, Plaintiff states his copy of the video file named and labeled as beginning at 2000 on October 4, 2013 actually begins at 1902. (Doc. 16 at 6). As a result, Plaintiff states that there is roughly a 105-minute gap in the video between 1:13 a.m. and 3:00 a.m. on October 5, 2013. (Doc. 16 at 8). Again, the County's timestamps contain no such discrepancy. Moreover, the County notes that at some juncture Plaintiff's timestamps matched the video file names because, in Plaintiff's Complaint, he alleges, "There was no video footage provided during the entire block of time from 2:13 a.m. to 4:10 a.m." on October 5, 2013. (Doc. 1 at ¶ 43). This is the same gap in time Plaintiff discusses in Doc. 16, it is just one hour later. Thus, in July 2015, Plaintiff's timestamps on the videos were not off by approximately an hour from the video file names.

Plaintiff states that his copies of the Pelco exports also contain the same one hour discrepancy. However, the Pelco exports in the County's possession begin at the time stated in the file name.

In short, the County has no answer for why Plaintiff's timestamps now "are off by approximately one hour." The County will nevertheless produce to Plaintiff's counsel another complete set of its video exports, copied directly from

the three original export sources kept at the JCSO, for Plaintiff's counsel's inspection in hopes that the times can be reconciled.

In any event, it appears the Pelco export is, in fact, incomplete. The first Pelco file (CH07_20131004_1600) begins at 1600 hours and ends at 1900 hours. Aside from the one hour discrepancy, this comports with what is stated in Document 16 at page 10. The second Pelco export file begins at 0005 hours, which also comports with Document 16. The County cannot speak for Pelco regarding this gap. The County can, however, say its export contains no such five-hour gap. The one time gap Mr. Hauque-Hasrath complained of was addressed by the County on or about November 14, 2013. Aff. Rebecca Warner ¶ 9, Oct. 19, 2016; Aff. Matt Johnson ¶ 5, Oct. 19, 2016.

There is only one significant "gap" in the video footage during the time frame the sexual assault allegedly occurred, and that is the time frame between 0213 hours and 0400 hours (or 1:13 a.m. through 3:00 a.m. if using Plaintiff's timestamps) on October 5, 2013. In analyzing this gap, the Court should be aware that the video export fails to corroborate any other portion of Plaintiff's allegations.

Specifically, Plaintiff alleges that, when he first arrived in A-Pod, he was offered a cup of coffee which he accepted but later left unattended while he showered. (Doc. 1 at ¶ 18). Plaintiff suspects someone took the opportunity to drug his coffee. (Doc. 1 at ¶ 21). However, there is video footage of the time when

Plaintiff arrived in A-Pod on October 4, 2013, through 0213 hours on October 5, 2013, and that footage does not corroborate Plaintiff's version of events at all. (Rpt. of Philip Matteson, pp. 52-55, 76, 83, Sept. 30, 2016 (attached hereto as Exhibit A).)

In addition, Plaintiff alleges he was anally penetrated. (Doc. 1 at ¶ 19). He further alleges that, when he awoke on the morning of October 5, 2013, other detainees were in the shower and he waited until the shower was unoccupied before entering the shower himself and removing his clothes. Again, this is entirely inconsistent with the video export partly because Plaintiff's sequence of events is not correct and partly because Plaintiff's version of events is inconsistent with anal gang rapes. (Ex. A pp. 77-78, 82-83).

It must further be remembered that there were nine other detainees in A-Pod with Plaintiff. Each of them was interviewed by law enforcement (not all interviews were conducted by the JCSO and many were no longer incarcerated when interviewed). None of the other detainees substantiate any part of Plaintiff's sexual assault allegations.

Finally, JCSO was not the only investigating agency in this matter. The Department of Homeland Security Office for Civil Rights and Civil Liberties retained jail expert Wendy Still to investigate the matter. She concluded, in part, that Plaintiff's allegations of sexual assault were unfounded. (Corrections Expert's

Rpt. by Wendy S. Still, MAS pp. 6-10, Aug. 24, 2014 (attached hereto as Exhibit B).) While this investigation was, in part, based on the video footage Plaintiff contests was incomplete, it was deemed sufficient by Ms. Still. (Ex. B, p. 8).

## ARGUMENT

Plaintiff seeks to preclude the County from discussing the lack of footage in its defense and seeks an adverse instruction that the County destroyed evidence. In such instances, it has been held:

> There is not complete agreement about whether spoliation sanctions are appropriate in any given instance, and, more specifically, whether an adverse inference instruction is warranted. The majority of courts use some variation of the three-part test set forth by Judge Scheindlin in *Zubulake IV* for determining whether to grant an adverse inference spoliation instruction. That test is as follows: "[a] party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." After considering these factors, a court must then consider all available sanctions and determine the appropriate one.

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 881 F.Supp.2d 1132, 1138 (N.D. Cal. 2012)(citing *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D. N.Y. 2003). However, even where a party has destroyed evidence, sanctions are not necessarily appropriate. *Reinsdorf v. Sketcher U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013)(citation omitted). Further, "The party requesting sanctions bears

the burden of proving, by a preponderance of the evidence, that spoliation took place." *Tetsuo Akaosugi v, Benihanna Nat'l Corp.*, 2012 WL 929672 at *3 (N.D. Cal. Mar. 19, 2012).

I.   **Plaintiff Has Not Met His Burden of Proving Spoliation Has Occurred.**

Plaintiff has failed to meet his burden of proving by a preponderance of evidence that spoliation occurred here. Again, the only relevant "gap" in time is the gap between 0213 hours and 0400 hours on October 5, 2013. The system does not record in the absence of movement. At that time of night, it is understandable how there would be no movement and, hence, no footage.

Regardless, Plaintiff hired a consultant, Jason Latham, to opine as to what *could* have been gleaned by retaining the hard drive. (Doc. 16-14 at 2). What is noticeably absent from Mr. Latham's report is a statement that retention of the hard drive would have, within a reasonable degree of probability, produced video footage of the relevant time period. Indeed, Mr. Latham acknowledges that most DVR systems are proprietary (Doc. 16-14 at 3), but he nevertheless does not purport to be an expert in *this* system. Thus, Mr. Latham's opinions (to the extent they are expert opinions) are lacking.

More important, when Plaintiff's counsel asked for the missing footage from 2230 hours through midnight on October 4, 2013, the County produced it. Simply put, the County produced what video footage there was and even spent thousands

of dollars to make sure of the fact. Moreover, the video was viewed directly from the system (not from an export) by Eric Rykal. Aff. Eric Rykal ¶ 3, Oct. 19, 2016. A member of law enforcement not employed by the County was present for at least part of the viewing. Aff. Eric Rykal ¶ 3, Oct. 19, 2016. No evidence of a sexual assault was gleaned from that viewing and no untoward gaps in time were noted. Thus, it can reasonably be inferred that the lack of footage from 0213 hours through 0400 hours on October 5, 2013, was due to there being nothing to record.

This is particularly true in light of the fact that Plaintiff's allegations are actually refuted by the video footage. Plaintiff did not accept a cup of coffee from an inmate and leave it unattended on October 4, 2013. The events at breakfast on October 5, 2013 did not occur as alleged by Plaintiff. There is substantial video of A-Pod beginning at 0400 hours through breakfast (beginning at 0703 hours) on October 5, 2013, and that video does not depict what one would expect from the scene of an anal gang rape. Plaintiff's credibility is, in short, lacking. Plaintiff has failed to meet his burden of demonstrating that spoliation actually occurred.

## II.     The County Had a Duty to Preserve Evidence, Which It Did.

While there is no dispute that Plaintiff's counsel put the County on notice that Plaintiff sought preservation of evidence on October 21, 2013, there is likewise no dispute that the County believed it had done so. Aff. Matt Johnson ¶ 9, Oct. 19, 2016; Aff. Craig Doolittle ¶ 18, Oct. 19, 2016. This was done at

substantial cost to the County. Preservation of the hard drive would have cost thousands of dollars more in that the County would have had to purchase a new and separate hard drive.

A party is under a duty to preserve what it knows or reasonably should know is relevant in the action. *Zubulake*, 220 F.R.D. at 217. Plaintiff never requested preservation of the hard drive and the County did its utmost to preserve the evidence it had. Plaintiff describes the County as a "regular litigant" and, therefore, the County should have known to preserve the hard drive. (Doc. 16 at 17). However, the County had never had occasion to preserve a hard drive and did not believe it had an obligation to do so here because of its preservation of the video footage itself. Aff. Matt Johnson ¶ 12, Oct. 19, 2016. Thus, Plaintiff has not demonstrated a duty on the part of the County to preserve the hard drive. The County did have a duty to preserve the evidence, and it did so.

**III. The Scope of the County's Duty to Preserve Did Not Reasonably Include the Hard Drive.**

Plaintiff relies on an example (not a holding) set forth in *Zubulake* to stand for the proposition that the County had an absolute duty to preserve the hard drive here. The County acknowledges there was an incomplete export in the initial export done by Ms. McKenrick. However, that was rectified by the Warner export. Thus, Plaintiff's claims that the video files are "facially incomplete" is not accurate. Moreover, the video from the hard drive itself was viewed by Eric Rykal

and others and nothing untoward was observed. While Plaintiff certainly has a right to view the same evidence the County did, there is no evidence that he has been deprived of that right. While the County understands that Plaintiff's point is that the hard drive may have been able to demonstrate an interruption in the video feed or a malfunction or some similar event, there is no evidence that there is any missing video footage (the initial error was corrected and the video from the hard drive observed). Thus, it cannot be demonstrated that preservation of the hard drive would have preserved relevant evidence.

### IV.     **The County Did Not Act with the Requisite Culpability.**

Plaintiff asserts the County acted with the requisite culpability and cannot rule out intentional deletion of the hard drive. (Doc. 16 at 18-19). However, the County simply lacks the knowledge to edit or delete video from the system. Aff. Craig Doolittle ¶ 19, Oct. 19, 2016; Aff. Eric Rykal ¶ 8, Oct. 19, 2016; Aff. Jennifer McKenrick ¶ 10, Oct. 19, 2016; Aff. Rebecca Warner ¶ 8, Oct. 19, 2016.

Still, Plaintiff asserts the County was at a minimum grossly negligent. (Doc. 16 at 19). As noted throughout this brief, however, the County believes it did preserve the evidence, namely the video footage, and that the hard drive would not provide Plaintiff with additional footage to view. Indeed, based on how the video directly conflicts with Plaintiff's version of events, if there was additional footage, it likely would not help Plaintiff's case. Regardless, the "continuous video of the

entire night" (Doc. 16 at 20) which Plaintiff seeks has never been available because the system does not record continuously.

## V. Sanctions Are Not Appropriate.

Plaintiffs seek to preclude the County from discussing the lack of footage, seek and adverse instruction informing the jury that the County destroyed evidence and that it may infer the evidence was favorable to Plaintiff, and seeks the costs associated with retaining a consultant and filing his motion. Sanctions are simply not appropriate here.

The unreported case on which Plaintiff relies, *Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423 (N.D. Cal., Dec. 20, 2005), is not directly on point. There, the video footage at issue was written over before it was preserved in any fashion. *Id.* at *2. In this case, the video was preserved (albeit not without an initial misstep) before the hard drive was written over.

In determining what spoliation sanction, if any, is appropriate, a court should consider: 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008).

The County's degree of fault here is simply not significant. The County preserved the videos evidence. The County spent significant dollars to ensure the

preservation of the video. The County (and ICE) viewed the video from the hard drive and conducted a thorough criminal investigation. The County's conduct was not "dilatory" nor designed to destroy evidence. Moreover, the County was not aware of an "explicit need" to preserve the hard drive. (Doc. 16 at 25). This is so because Plaintiff never requested preservation of the hard drive and the County was unaware of the need to do so since it had preserved the video footage. Thus, the first element is not met.

Plaintiff's degree of prejudice is not significant, if there is prejudice. The footage the system recorded (which is substantial) is not supportive of Plaintiff's case in any manner. Thus, imposing an inference that the missing" footage was favorable to Plaintiff would fly in the face of the other evidence in the case.

Last, the County denies any sanction is appropriate. The system simply does not record when there is no movement. A sanction precluding the County from discussing the lack of footage is tantamount to saying the County cannot offer testimony as to how the video system works. Any permissive inference (which Plaintiff proposes) should at least allow the County to describe to the jury how the system works and offer a reasonable explanation for why there is no footage between 0213 hours and 0400 hours on October 5, 2013. Further, the County observes that Plaintiff would have had to engage the services of an expert even if

the hard drive had been preserved. Thus, no costs should be imposed on the County.

The County preserved the evidence it knew it had. It should not be punished for doing so. For the foregoing reasons, Plaintiff's Motion for Sanctions should be denied.

DATED this 19th day of October, 2016.

MACo Defense Services

/s/ Gregory L. Bonilla
Gregory L. Bonilla

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E) of the Local Rules of Procedure for the United States District Court for the District of Montana, I hereby certify that this Brief contains 3,423 words, excluding the caption and this certificate of compliance as calculated by Microsoft Word.

DATED this 19th day of October, 2016.

/s/ Gregory L. Bonilla
Gregory L. Bonilla
Counsel for County Defendants